J-S12045-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.T.N., III, A MINOR | : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: C.E.B., MOTHER | : | No. 1830 EDA 2015 |

Appeal from the Decree May 20, 2015,
in the Court of Common Pleas of Philadelphia County,
Juvenile Division, at No(s): CP-51-AP-0000009-2015

BEFORE: MUNDY, OLSON, and STRASSBURGER,* JJ.

MEMORANDUM BY STRASSBURGER, J.: **FILED FEBRUARY 18, 2016**

C.E.B. (Mother) appeals from the May 20, 2015 decree granting the petition of the Philadelphia Department of Human Services (DHS) to terminate involuntarily Mother's parental rights to C.T.N., III (Child).[1, 2] Also before the Court is the petition of Mother's counsel to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).[3] We affirm the decree and grant the petition to withdraw.

---

[1] The same day that the trial court terminated Mother's parental rights to Child, the court entered a decree terminating the parental rights of C.T.N., Jr. (Father). This appeal does not address the decree terminating Father's parental rights to Child.

[2] The assignment of this appeal to this panel was delayed due to the failure of the trial court to transmit the certified record to this Court in a timely fashion. Such delays are unacceptable. We remind the trial court that time is of the essence in cases involving the termination of parental rights.

[3] Because counsel was appointed to represent Mother, an indigent parent, and because Mother is appealing from a decree terminating her parental rights, counsel may seek to withdraw pursuant to *Anders*. *In re: V.E.*, 611 A.2d 1267 (Pa. Super. 1992).

*Retired Senior Judge assigned to the Superior Court.

Child was born on July 29, 2012. On March 22, 2013, DHS received a General Protective Services (GPS) report alleging that Child and his brother (collectively referred to as "Children") were residing in unsanitary living conditions with Mother and Father. More specifically, the home, *inter alia*, was littered with cat feces, houseflies, and soiled clothing; moreover, Mother appeared to be uninterested in keeping the home clean.

The report was substantiated, and on March 22, 2013, DHS obtained an Order of Protective Custody (OPC) for Children. Children were removed from the home. Child's brother later was placed in the care of his natural father, where he continues to reside. The trial court summarized the remainder of the background underlying this matter as follows.

> On March 27, 2013, at the Shelter Care hearing, the trial court lifted the OPC and ordered the temporary commitment to DHS to stand. On the same day, Child was placed in foster care through Women's Christian Alliance, where he currently remains. On April 3, 2013, [] Child was adjudicated dependent and fully committed to DHS. The trial court ordered DHS to refer Mother to the Achieving Reunification Center ("ARC"), the Behavioral Health System ("BHS"), and Family School. Mother was granted liberal supervised visits.

> On April 12, 2013, DHS referred Mother to ARC but Mother was not compliant with the referral. On April 30, 2013, an ARC field worker met with Mother and encouraged her to participate at ARC services. Mother agreed to report to ARC on May 4, 2013, but she failed to do so. In May 2013, due to Mother's failure to respond to several ARC outreach attempts, ARC discontinued their efforts to encourage Mother to participate in the services offered.

> Mother did not attend her [Family Service Plan (FSP)] meetings [in] May 2013. On May 14, 2013, Mother started to

attend Family School and on June 6, 2013, the initial [FSP] was developed for Mother. Mother's objectives were to stabilize her mental health, to attend family school, employment, housing and parenting classes, to maintain a relationship with [] Child [through] regular visitation, and to meet [] Child's basic needs.

On June 20, 2013, Family Support Services completed a Family School report that indicated Mother missed several class days. On June 25, 2013, Mother participated in a psychological evaluation. Mother was diagnosed with adjustment disorder with a depressed mood.

On the same date, at a Permanency Review hearing, the trial court found Mother to be minimally compliant with her FSP objectives. Mother did not attend her FSP meetings in August 2013. On September 11, 2013, at the Permanency Review hearing, the trial court found that Mother was not attending mental health services at Community Organization for Mental Health and Retardation ("COHMAR") and [Mother's visits] remained supervised at the agency. The trial court found Mother minimally compliant with her FSP objectives.

On January 24, 2014, Family Support Services completed a Family School report that noted that Mother continued to miss classes. On March 19, 2014, Mother participated in another psychological evaluation. During the evaluation, Mother disclosed that she had a history of mental issues such as bipolar disorder, depression and anxiety. Mother also stated that DHS referred her to psychotherapy but she refused to attend because she did not want to be upset with questions. Additionally, Mother admitted being easily upset and experiencing lack of motivation, anhedonia, sad mood, mood swings, low self-[esteem] and excessive worry. Mother reported having these symptoms before she lost the custody of [] Child. Mother was diagnosed with a major depressive disorder. Individual therapy was recommended to address Mother's depression.

On February 5, 2014, at a Permanency Review hearing, Mother was found minimally compliant with her FSP objectives. The trial court ordered Mother to be notified and invited to Child's medical appointments. At the Permanency Review hearing, on May 6, 2014, Mother was found fully compliant with her FSP objectives. Mother's visitation remained supervised. At

the same hearing, Mother was ordered by the trial court to attend an intake appointment at COHMAR. However, on May 7, 2014, Mother failed to attend the appointment.

At the Permanency Review hearing, on September 16, 2014, the trial court found Mother non-compliant with her FSP objectives. Mother's visits remained supervised. DHS filed its petition to terminate Mother's parental rights on January 7, 2015.

At the Permanency Review hearing, on May 20, 2015, the trial court found Mother minimally compliant with her FSP objectives. On May 20, 2015, the trial court terminated Mother's parental rights [pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b)]. At the termination hearing, Mother stipulated to the statement of facts on the petitions and DHS exhibits. [Mother timely filed a notice of appeal and a statement pursuant to Pa.R.A.P. 1925(a)(2), and the trial court subsequently issued an opinion in support of its decision.]

Trial Court Opinion, 9/22/2015, at 2-3 (citation omitted; reformatted for ease of reading).

Counsel then filed with this Court a petition to withdraw and an *Anders* brief. We consider such matters as follows.

Direct appeal counsel seeking to withdraw under *Anders* must file a petition averring that, after a conscientious examination of the record, counsel finds the appeal to be wholly frivolous. Counsel must also file an *Anders* brief setting forth issues that might arguably support the appeal along with any other issues necessary for the effective appellate presentation thereof….

*Anders* counsel must also provide a copy of the *Anders* petition and brief to the appellant, advising the appellant of the right to retain new counsel, proceed *pro se* or raise any additional points worthy of this Court's attention.

If counsel does not fulfill the aforesaid technical requirements of *Anders*, this Court will deny the petition to withdraw and remand the case with appropriate instructions

- 4 -

(*e.g.*, directing counsel either to comply with **Anders** or file an advocate's brief on Appellant's behalf). By contrast, if counsel's petition and brief satisfy **Anders**, we will then undertake our own review of the appeal to determine if it is wholly frivolous. If the appeal is frivolous, we will grant the withdrawal petition and affirm the judgment of sentence. However, if there are non-frivolous issues, we will deny the petition and remand for the filing of an advocate's brief.

**Commonwealth v. Wrecks**, 931 A.2d 717, 720-21 (Pa. Super. 2007)

(citations omitted). Our Supreme Court has expounded further upon the

requirements of **Anders** as follows.

[I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago**, 978 A.2d at 361.

Based upon our examination of counsel's petition to withdraw and

**Anders** brief, we conclude that counsel has substantially complied with the

technical requirements set forth above.[4] Therefore, we now have the

responsibility "'to make a full examination of the proceedings and make an

independent judgment to decide whether the appeal is in fact wholly

---

[4] Mother has not responded to counsel's petition to withdraw.

frivolous.'" **Commonwealth v. Flowers**, 113 A.3d 1246, 1249 (Pa. Super. 2015) (quoting **Santiago**, 978 A.2d at 354 n.5).

The **Anders** brief suggests that only one issue might arguably support this appeal, namely, whether DHS presented sufficient evidence to allow the trial court to terminate Mother's parental rights. We consider this issue mindful of the following.

> In cases involving the termination of a parent's rights, our standard of review is limited to determining whether the order of the trial court is supported by competent evidence, and whether the trial court gave adequate consideration to the effect of such a decree on the welfare of the child.
>
> Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand…. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

**In re C.W.U., Jr.**, 33 A.3d 1, 4 (Pa. Super. 2011) (internal quotations and citations omitted).

Our courts apply a two-part analysis in considering termination of parental rights.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention

paid to the effect on the child of permanently severing any such bond.

**In re P.Z.**, 113 A.3d 840, 850 (Pa. Super. 2015) (quoting **In re L.M.**, 923 A.2d 505, 511 (Pa. Super. 2007)).

The governing statute provides, in relevant part, as follows.

> **(a) General rule**.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
>
> ***
>
> **(b) Other considerations.**--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1) … the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

We have explained this Court's review of a challenge to the evidence to support the involuntary termination of a parent's rights pursuant to subsection 2511(a)(1) as follows:

> To satisfy the requirements of section 2511(a)(1), the moving party must produce clear and convincing evidence of conduct, sustained for at least the six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. In addition, [s]ection 2511 does not require that the parent demonstrate both a settled purpose of relinquishing parental claim to a child and refusal or failure to perform parental duties. Accordingly, parental rights may be terminated pursuant to [s]ection 2511(a)(1) if the parent either demonstrates a settled purpose of relinquishing parental claim to a child or fails to perform parental duties. Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to [s]ection 2511(b).

*In re Z.S.W.*, 946 A.2d 726, 730 (Pa. Super. 2008) (internal citations and quotations omitted).

We have offered the following to guide us in determining what exactly parental duties are.

> There is no simple or easy definition of parental duties. Parental duty is best understood in relation to the needs of a child. A child needs love, protection, guidance, and support. These needs, physical and emotional, cannot be met by a merely passive interest in the development of the child. Thus, this court has held that the parental obligation is a positive duty which requires affirmative performance.
>
> This affirmative duty encompasses more than a financial obligation; it requires continuing interest in the child and a genuine effort to maintain communication and association with the child.
>
> Because a child needs more than a benefactor, parental duty requires that a parent exert himself to take and maintain a place of importance in the child's life.

- 8 -

> Parental duty requires that the parent act affirmatively with good faith interest and effort, and not yield to every problem, in order to maintain the parent-child relationship to the best of his or her ability, even in difficult circumstances. A parent must utilize all available resources to preserve the parental relationship, and must exercise reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child relationship. Parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her physical and emotional needs.

*In re B.,N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004) (internal citations and quotations omitted).

In its opinion, the trial court determined that DHS presented sufficient, competent evidence to support a determination that termination of Mother's parental rights was proper pursuant to subsection 2511(a)(1). Trial Court Opinion, 9/22/2015, at 3-6. We can discern no error in the court's rationale. We therefore adopt this portion of the trial court's opinion in determining that DHS presented sufficient evidence that termination of Mother's parental rights was proper pursuant to subsection 2511(a)(1).[5] The parties shall attach a copy of the trial court's September 22, 2015 opinion to this memorandum in the event of further proceedings. We now turn our attention to subsection 2511(b).

---

[5] Based upon our conclusion regarding subsection (a)(1), we need not consider whether the trial court properly terminated Mother's parental rights pursuant to subsections 2511(a)(2), (5), or (8). *See In re N.A.M.*, 33 A.3d 95, 100 (Pa. Super. 2011) ("We must agree with the trial court's decision as to only one subsection of 23 Pa.C.S. § 2511(a) in order to affirm the termination of parental rights.").

In reviewing the evidence in support of termination under subsection 2511(b), we consider whether the termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. *See In Re C.M.S.*, 884 A.2d 1284, 1286-1287 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *Id.* at 1287 (citations omitted). The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect of permanently severing the bond on the child. *See id*.

The trial court determined that Mother waived any challenge to its subsection 2511(b) determination because she failed to present an issue regarding this subsection in her Pa.R.A.P. 1925 statement. Trial Court Opinion, 9/22/2015, at 3. Assuming *arguendo* that Mother did not waive this issue, we conclude that DHS presented sufficient evidence to allow the trial court to find that DHS met its burden of proof under subsection 2511(b).

The only witness to testify for DHS at the termination hearing was Bianca Perez, a case worker for APM Community Umbrella Agencies. Relevant to subsection 2511(b), Ms. Perez testified that Child has lived in his current foster care home since he was eight months old. N.T., 5/20/2015, at 22. Child is very bonded to his foster mother; he calls her "mommy" and tells her that he loves her. *Id.* at 29. According to Ms. Perez, foster mother

- 10 -

and Child have a very strong maternal bond. *Id.* Ms. Perez also explained that foster mother takes care of all of Child's needs. *Id.* at 29-30.

Ms. Perez acknowledged that there is a bond between Mother and Child, but she "wouldn't describe it as a maternal bond[.]" *Id.* at 30. Ms. Perez opined that Child would not suffer irreparable harm if Mother's parental rights were terminated. *Id.* Furthermore, Ms. Perez believed that Child would suffer such harm if he were removed from his foster mother. *Id.* at 31.

Within the context of concluding that termination was proper pursuant to subsection 2511(a)(8), which requires a determination as to whether termination of parental rights would best serve the needs and welfare of the child, the trial court stated,

> [] Child has been in his respective [foster care] home for a long time. [] Child is in a safe home and stable environment with foster parents providing for all [of] his needs. [] Child needs permanency. Termination of Mother's parental rights and adoption would best serve the needs and welfare of [] Child. The testimony of the DHS witnesses [*sic*] was unwavering and credible.

Trial Court Opinion, 9/22/2015, at 8 (citations omitted). We agree with the court.

Mother's progress toward meeting her goals has been minimal and inconsistent. All the while, Child's foster mother has provided him with love, comfort, security, and stability. Moreover, DHS presented sufficient evidence to establish that severing the bond between Mother and Child will

not result in irreparable harm to Child. Child's need for permanency cannot wait until Mother decides to participate in the care and support of Child.

Consequently, the trial court properly concluded that termination of Mother's parental rights best serves Child's needs and welfare. Thus, we agree with Mother's counsel that any issue challenging the sufficiency of the evidence to support the decree is frivolous. Moreover, we have conducted "a full examination of the proceedings" and conclude that "the appeal is in fact wholly frivolous." ***Flowers***, 113 A.3d at 1248. Accordingly, we affirm the court's decree and grant counsel's petition to withdraw.

Decree affirmed. Petition to withdraw granted.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 2/18/2016

IN THE COURT OF COMMON PLEAS

FOR THE COUNTY OF PHILADELPHIA

FAMILY COURT DIVISION

In re: In the Interest of C.T.N. III             : CP-51-AP-0000009-2015

                                                  : 51-FN-001057-2013

APPEAL OF: C.E.B. Mother                         :   1830 EDA 2015

**OPINION**

**Fernandes, J.:**

Appellant C.E.B ("Mother"), appeals from the order entered on May 20, 2015, granting the petition filed by the Department of Human Services of Philadelphia County ("DHS"), to involuntarily terminate Mother's parental rights to C.T.N.III ("Child") pursuant to the Adoption Act. 23 Pa.C.S.A. §2511 (a) (1), (2), (5), and (8). Jennifer Santiago, Esquire, counsel for Mother, filed a timely Notice of Appeal with a Statement of Errors Complained Of pursuant to Rule 1925(b).

**Factual and Procedural Background**

This family became involved with the Department of Human Services ("DHS") on March 22, 2013, when DHS received a General Protective Services ("GPS") report alleging that Child was residing with his Mother in poor living conditions. The home was littered and appeared to be unsanitary. There were cat feces, houseflies, and soiled clothing. The report was substantiated and alleged that Mother appeared to be uninterested. On March 22, 2013. DHS visited and met with Child's Mother. DHS observed that the home was in poor condition, that there were dirty blankets on the Child's bed, that Child's bed was next to an electrical outlet, that houseflies were all over the home, and that there were dirty dishes in the sink and the refrigerator was extremely dirty. During DHS visit, Mother was uncooperative. DHS learned that Mother had a history of living in unsanitary conditions. On March 22, 2013, DHS obtained an Order of Protective Custody ("OPC") for the Child and contacted the Police Department to assist with Child's removal. DHS removed the Child and transported him to Baring House.

On March 27, 2013, at the Shelter Care hearing, the trial court lifted the OPC and ordered the temporary commitment to DHS to stand. On the same day, Child was placed in foster care through Women's Christian Alliance, where he currently remains. On April 3, 2013, the Child was adjudicated dependent and fully committed to DHS. The trial court ordered DHS to refer Mother to the Achieving Reunification Center ("ARC"), the Behavioral Health System ("BHS"), and Family School. Mother was granted liberal supervised visits. On April 12, 2013, DHS referred Mother to ARC but Mother was not compliant with the referral. On April 30, 2013, an ARC field worker met with Mother and encouraged her to participate at ARC services. Mother agreed to report to ARC on May 4, 2013, but she failed to do so. In May 2013, due to Mother's failure to respond to several ARC outreach attempts, ARC discontinued their efforts to encourage Mother to participate in the services offered. Mother did not attend her FSP meetings on May 2013. On May 14, 2013, Mother started to attend Family School and on June 6, 2013, the initial Family Service Plan ("FSP") was developed for Mother. Mother's objectives were to stabilize her mental health, to attend family school, employment, housing and parenting classes, to maintain a relationship with her Child thru regular visitation, and to meet her Child's basic needs. On June 20, 2013, Family Support Services completed a Family School report that indicated Mother missed several class days. On June 25, 2013, Mother participated in a psychological evaluation. Mother was diagnosed with adjustment disorder with a depressed mood. On the same date, at a Permanency Review hearing, the trial court found Mother to be minimally compliant with her FSP objectives. Mother did not attend her FSP meetings in August 2013. On September 11, 2013, at the Permanency Review hearing, the trial court found that Mother was not attending mental health services at Community Organization for Mental Health and Retardation ("COHMAR") and Mother visit's remained supervised at the agency. The trial court found Mother minimally compliant with her FSP objectives.

On January 24, 2014, Family Support Services completed a Family School report that noted that Mother continued to miss classes. On March 19, 2014, Mother participated in another psychological evaluation. During the evaluation, Mother disclosed that she had a history of mental issues such as bipolar disorder, depression and anxiety. Mother also stated that DHS referred her to psychotherapy but she refused to attend because she did not want to be upset with questions. Additionally, Mother admitted being easily upset and experiencing lack of motivation, anhedonia, sad mood, mood swings, low self-steem and excessive worry. Mother reported having these

symptoms before she lost the custody of her Child. Mother was diagnosed with a major depressive disorder. Individual therapy was recommended to address Mother's depression. On February 5, 2014, at a Permanency Review hearing, Mother was found minimally compliant with her FSP objectives. The trial court ordered Mother to be notified and invited to Child's medical appointments. At the Permanency Review hearing, on May 6, 2014, Mother was found fully compliant with her FSP objectives. Mother's visitation remained supervised. At the same hearing, Mother was ordered by the trial court to attend an intake appointment at COHMAR. However, on May 7, 2014, Mother failed to attend the appointment. At the Permanency Review hearing, on September 16, 2014, the trial court found Mother non-compliant with her FSP objectives. Mother's visits remained supervised. DHS filed its petition to terminate Mother's parental rights on January 7, 2015. At the Permanency Review hearing, on May 20, 2015, the trial court found Mother minimally compliant with her FSP objectives. On May 20, 2015, the trial court terminated Mother's parental rights. At the termination hearing, Mother stipulated to the statement of facts on the petitions and DHS exhibits. (N.T. 5/20/15, pgs. 20-21). Mother's attorney filed a timely notice of appeal on June 17, 2015.

**Discussion:**

On appeal, Mother raises the following issues:

1. The trial court committed reversible error when it involuntarily terminated Mother's parental rights where such a determination was not supported by clear and convincing evidence under the Adoption Act 23 Pa.C.S.A. §2511 (a) (1), (2), (5) and (8) when Appellant contends Mother made progress towards working and meeting the FSP goals.

Mother only appealed the trial court decision as to an abuse of discretion under § 2511 (a), and waived her right to appeal as to §2511(b) and the change goal to adoption.

**(a) General rule** - The rights of a parent, in regard to a child, may be terminated after a petition is filed on any of the following grounds:

(1) The parent, by conduct continuing for a period of at least six months immediately preceding the filing of the petition, has either evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

In proceedings to involuntary terminate parental rights, the burden of proof is on the party seeking termination to establish by clear and convincing evidence the existence of grounds for termination. *In re Adoption of Atencio*, 539 Pa. 161, 650 A.2d 1064 (1994). To satisfy section (a) (1), the moving party must produce clear and convincing evidence of conduct sustained for at least six months prior to the filing of the termination petition, which reveals a settled intent to relinquish parental claim to a child or a refusal or failure to perform parental duties. However, the six-month time period should not be applied mechanically; instead, the court must consider the whole history of the case. *In re B.N.M.*, 856 A.2d 847, 855 (Pa. Super. 2004). The standard of clear and convincing evidence is defined as testimony that is so clear, direct weighty and convincing as to enable the trier of fact to come to a clear conviction without hesitance of the truth of precise facts in issue. *In re D.J.S.*, 1999 Pa. Super. 214 (1999). In Pennsylvania, a parent's right to custody and rearing of his child is converted upon failure to fulfill his or her parental duties to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, and safe environment. *In re B.N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004).

DHS filed its petition to terminate Mother's parental rights on January 7, 2015. (N.T. 5/20/15, pg. 18). During the last six months, immediately preceding the filing of the petition, Mother has continuously failed to perform her parental duties. Nonetheless, as required in *In re B.N.M.*, the court considers the entire case history. DHS developed Mother's goals and objectives as part of her FSP, and Mother was aware of them. (N.T. 5/20/15, pg. 23). Mother's objectives were to stabilize her mental health, to attend family school, employment, housing and parenting classes, to maintain a relationship with her Child thru regular visits, and to meet her Child's basic needs. (DHS Exhibit 4), (N.T. 5/20/15, pgs. 23, 24, 25, 26).

Throughout the life of the case, Mother's compliance with her Single Case Plan and FSP has been inconsistent. The trial court found Mother minimally compliant with her FSP at the Permanency Review hearings on June 25, 2013, September 11, 2013, February 5, 2014, and May 20, 2015. Also, Mother was found non-compliant with her FSP objectives on September 16, 2014. As to Mother's stabilization of her mental health, the record established that Mother was diagnosed with adjustment disorder with depressed mood and she agreed that therapy was beneficial for her mental health. (DHS Exhibit 6). Additionally, the record revealed that Mother was attending mental health services but not progressing towards her mental stability, and no documentation verifying

Mother's treatment has been provided. (N.T. 5/20/15, pgs. 25-26, 35). Mother never requested DHS assistance to obtain the documentation verifying Mother's attendance and never asked DHS to contact her attorney to subpoena COHMAR. (N.T. 5/20/15, pg. 36). Although Mother claimed she is compliant with mental health services, she has never seen her current therapist. (N.T. 5/20/15, pg. 50). Mother also admitted seeing a psychiatrist for medication, but never made any effort to provide documentation to DHS social worker even though she was aware DHS social worker had requested it. Mother does not know when she last saw her psychiatrist. (N.T. 5/20/15, pg. 59). The record established that Mother was unsuccessfully discharged from family school. (N.T. 5/20/15, pgs. 25, 41). At Family School, Mother's attendance was very poor. (DHS Exhibit 10). According to the Family School Services report from January 2014, Mother only attended six of twenty-two visits. (DHS Exhibit 10). Additionally, the report from July 23, 2014, stated that Mother's attendance "has sharply declined" and "the assigned social worker has been unable to contact her". (DHS Exhibit 11). Mother was offered housing services, employment and parenting classes thru ARC, but Mother did not comply. (N.T. 5/20/15, pgs. 24-25, 40-41). Mother knew the importance of attending ARC services but she failed to do so and argued that she could not attend due to her new job. (N.T. 5/20/15, pgs. 41, 46, 51). Furthermore, Mother had as an objective to complete her education. However, Mother never did complete her education because she only wanted to do employment. (N.T. 5/20/15, pgs. 41, 55). As to Mother's housing, the record established that Mother stated that she was living with a family friend or cousin. (N.T. 5/20/15, pg. 39). The house was structurally appropriate, but the cousin's social security number was required to obtain clearances. Mother was aware of it, (N.T. 5/20/15, pg. 54), but the social security number was never provided and clearances were impossible to obtain. (N.T. 5/20/15, pgs. 23-24, 39-40). Consequently, Mother's housing objective still remains incomplete.

The record revealed that parenting classes were offered to Mother after she was unsuccessfully discharged from Family School classes. Mother had to attend parenting classes through ARC to fill the gaps left by her lack of attendance at Family School, but she failed to do so. (N.T. 5/20/15, pgs. 41-42, 46-47, 51). As a result, Mother's parental skills are not sufficient to assume the care of her Child and to have unsupervised visitation. (N.T. 5/20/15, pg. 27). As to Mother's employment, Mother states that she is currently employed but she has not provided DHS or the agency with documentation verifying it or information to contact her employer. (N.T. 5/20/15, pgs. 24, 38, 39). As to Mother's visitation, the trial court instructed Mother that she could not miss any

visitation but Mother continued to be inconsistent. (N.T. 5/20/15, pg. 27). In the summer of 2014, Mother missed more than one visit while Mother whereabouts was unknown. (N.T. 5/20/15, pgs. 27-28). Additionally, Mother also missed a whole month of visits in the winter 2014 without any explanation. (N.T. 5/20/15, pg. 58). The record also established that it is foster mother and not Child's biological Mother who provides for Child's daily needs, feeds the Child, puts him in bed, and takes the Child to his medical appointments. (N.T. 5/20/15, pgs. 29-30). Mother has never made any of the Child's dental appointments.(N.T. 5/20/15, pg. 53). Mother took no interest in following up with DHS social worker about the Child's medical appointments. . (N.T. 5/20/15, pg. 52). Mother's lack of compliance continued for at least six months prior to the filing of the termination petition. Mother has failed to achieve her FSP goals during the life of the case. As a result, the trial court found that Mother evidenced a settled purpose of relinquishing her parental claim, and refused or failed to perform parental duties during the six-month period immediately preceding the filing of the petition as required by §2511 (a) (1) of the Adoption Act. DHS has met its burden of clear and convincing evidence.

The trial court also terminated Mother's parental rights under the Adoption Act at 23 Pa.C.S.A. §2511(a) (2). This section of the Adoption Act includes, as a ground for involuntary termination of parental rights, the repeated and continued incapacity, abuse, neglect or refusal of the parent that causes the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent. This ground is not limited to affirmative misconduct. It may include acts of refusal to perform parental duties but more specifically on the needs of the child. _Adoption of C.A.W._, _683_ A.2d 911, 914 (Pa. Super. 1996).

The record established that Mother has been unable to provide her Child with the essential parental care, control, and subsistence necessary for his mental and physical well-being, since March 22, 2013. Mother has failed to stabilize her mental health, to attend family school, obtain employment and/or education, housing, attend parenting classes, improved her parental skills, to maintain a relationship with her Child thru regular visits, and meet her Child's basic needs. As a result, more than twenty-six months have not been enough to achieve her FSP goals. (N.T. 5/20/15, pgs. 23-27, 35-36, 39-42, 46-47, 50-54, 58-59, 46). Under Mother's current circumstances, she is unable to remedy the causes of her incapacity in order to provide her Child with essential parental care.

control or subsistence necessary for his physical and mental well-being. After months in foster care, Child needs permanency, which Mother cannot provide at this moment. Consequently, DHS has met its burden under §2511 (a) (2) of the Adoption Act.

The trial court also granted DHS' request for termination of parental rights under 23 Pa.C.S.A. §2511 (a) (5), whereby a child may be removed, by court or voluntary agreement, and placed with an agency at least six months, if conditions which led to the placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services reasonably available to the parent are not likely to remedy the conditions leading to placement, and/or termination best serves the child's needs and welfare. DHS, as a child and youth agency, cannot be required to extend services beyond the period of time deemed as reasonable by the legislature or be subjected to herculean efforts. A child's life cannot be put on hold in hope that the parent will summon the ability to handle the responsibilities of parenting. *In re J.T.*, 817 A.2d 509 (Pa. Super. 2001). As a consequence, Pennsylvania's Superior Court has recognized that a child's needs and welfare requires agencies to work toward termination of parental rights when a child has been placed in foster care beyond reasonable temporal limits and after reasonable efforts for reunification have been made by the agency, that have resulted unfruitful. This process should be completed within eighteen months. *In re N.W.*, 851 A.2d 508 (Pa. Super. 2004).

The record indicated that Mother has been unable to assume her parental duties since the Child was placed in foster care on March 22, 2013. Accordingly, Mother's incapacity and reluctance to assume her parental responsibilities throughout the entire life of the case has led the Child to remain in foster care. Child has been in foster care for more than twenty-six months. It is clear that after all this time, Mother has failed to stabilize her mental health, to attend family school, obtain consistent employment, housing, attend parenting classes, improved his parental skills, to maintain a relationship with her Child thru regular visits, and meet her Child's basic needs. On June 25, 2013, September 11, 2013, February 5, 2014, May 6, 2014, September 16, 2014, January 14, 2015 and May 20, 2015, the trial court found that DHS made reasonable efforts to reunify Mother and Child. Mother was aware of her FSP objectives. It is in the best interest of the Child to have a stable, nurturing, and permanent environment. Conditions that led to the placement of the Child continue to exist, and Mother cannot remedy them within a reasonable period of time. Throughout the life of the case, Mother has not reached sufficient skills to maintain unsupervised visits with

her Child. Mother has been inconsistent in her visits and in completing her other FSP objectives in that her visits went from unsupervised in the community to bi-weekly supervised. (N.T. 5/20/15. pgs. 26, 60). DHS has met its burden under §2511 (a) (5) of the Adoption Act.

As to §2511 (a) (8) of 23 Pa.C.S.A.. DHS also met its burden by clear and convincing evidence that Child has been out of Mother's care for twelve months or more, and the conditions leading to the placement still exist, and termination would best serve the needs and welfare of the Child. Child has been continuously under DHS custody for a period for more than two years. The conditions that led to the Child's placement still exist. Despite the good faith efforts of DHS to make services available, it is in the best interest of the Child to terminate Mother's parental rights.

As to the second element of Section 2511 (a) (8) that the conditions, which led to the Child's removal, continue to exist, DHS has also met its burden. As in *In re: Adoption of K.J.*, 938 A.2d 1128, 1133 (Pa. Super. 2009), a termination of parental rights under section 2511 (a) (8) does not require the court to evaluate a parent's willingness or ability to remedy which initially caused placement or the availability or efficacy of DHS services offered to Mother. In this case, the trial court found that Mother has failed to stabilize her mental health, to attend family school, obtain employment, housing, attend parenting classes, improved her parental skills, to maintain a relationship with her Child thru regular visits, and meet her Child's basic needs. Mother has not successfully completed her FSP objectives, particularly making progress in her mental health services. (N.T. 5/20/15, pgs. 26, 50, 59).

As to the third element of Section 2511 (a) (8), the party seeking termination must also prove by clear and convincing evidence that the termination is in the best interest of the child. The best interest of the child is determined after consideration of the needs and welfare of the child such as love comfort, security and stability. *In re Bowman*, 436 Pa. Super. 647. A.2d 217 (1994). See also *In re Adoption of T.T.B.*, 835 A.2d 387, 397 (Pa. Super. 2003). The Child has been in his respective pre-adoptive home for a long time.(N.T. 5/20/15, pg. 22). The Child is in a safe home and stable environment with foster parents providing for all his needs. (N.T. 5/20/15, pgs. 29-31, 34). The Child needs permanency. Termination of Mother's parental rights and adoption would best serve the needs and welfare of the Child. The testimony of the DHS witnesses was unwavering and credible.

**Conclusion:**

For the aforementioned reasons, the court finds that DHS met its statutory burden by clear and convincing evidence regarding the termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511 (a). Accordingly, the order entered on May 20, 2015, terminating the parental rights of Mother, C.E.B., should be affirmed.

By the court

Joseph Fernandes, J.

# IN THE COURT OF COMMON PLEAS

## FOR THE COUNTY OF PHILADELPHIA

## FAMILY COURT DIVISION

In re: In the Interest of C.T.N. III
                : CP-51-AP-0000009-2015

                : 51-FN-001057-2013

APPEAL OF: C.E.B.  Mother
                :  1830 EDA 2015

## PROOF OF SERVICE

I hereby certify that this court is serving, today Friday, September 22, 2015, the foregoing Opinion, by regular mail, upon the following person(s):

Katherine Holland, Esquire
City of Philadelphia Law
Office of the City Solicitor
Department 1515 Arch Street, 16th Floor
Philadelphia, Pennsylvania 19102-1595
Attorney for D.H.S.

Karen Deanna Williams, Esquire
15th & Market Streets
Philadelphia, PA 19102
Counsel for Mother

Jennifer Santiago, Esquire
100 South Broad Street, Suite 1331
Philadelphia, PA 19110
Attorney for Mother

BY THE COURT:

Honorable Joseph L. Fernandes